## PROSECUTION OF LUMBER DEALERS UNDER THE VALENTINE ANTI-TRUST LAW.

### Circuit Court of Lucas County.

EDWARD E. ARNSMAN ET AL v. THE STATE OF OHIO.

Decided, March 28, 1908.

*Indictment—Attack on, for Duplicity and Indefiniteness—Allegation as to an "Unlawful Trust and Combination"—Failure to Add "of Persons" Immaterial—Numerous Offenses Blended in One Count—Office of Motion to Quash—Defendant Sufficiently Informed as to the Charge he was to Meet—Penalty—Sentence and Resentence—Sections 4727, 4727-4 and 4727-10.*

1. A motion to quash is the proper procedure to point out the defects of duplicity and indefiniteness in an indictment, and failure to file such a motion and entry of a general plea to the indictment is a waiver of those defects.

2. An indictment which charges that accused and numerous other named defendants, on a day named and continuously between that date and the day the indictment is found, were members of an unlawful trust and combination formed for the purpose of carrying out restraint in trade and commerce, increasing the price and preventing competition in the sale of lumber, and knowingly acted with and in pursuance of, and aided and assisted in carrying out the purposes of such unlawful combination, binding themselves not to sell any lumber for use in a designated locality below the common standard of figures, and agreeing to pool, combine and unite their interests in such lumber trade, states a violation of Section 1 of 93 O. L., 143 (R. S., 4427-1), commonly called the Valentine anti-trust law, which is punishable by fine or imprisonment under Section 4 (Section 4427-4) thereof, and not Section 10 (R. S., 4427-10).

3. A work house sentence having been illegally imposed for violation of the Valentine anti-trust law will be set aside on review and the case remanded to the trial court for resentence, which may be by fine or imprisonment or both, in the discretion of the court as on original hearing.

*Barton Smith,* for plaintiffs in error.

*L. W. Wachenheimer,* Prosecuting Attorney, contra.

WILDMAN, J.; PARKER, J., and KINKADE, J., concur.

This case has been twice orally argued before this court, once prior to the death of Judge Haynes, and again since Judge Kinkade succeeded to the vacancy. The case is one which has involved so many parties in interest and has been deemed so important as involving some constructions of the statutes known as the Valentine anti-trust law, that we have given it our most careful consideration.

The indictment was drawn under Section 4427-1 *et seq.*, Revised Statutes, and charges the defendants with a trust said to affect the price of lumber. Numerous defendants in the court below, without attacking the indictment by motions or demurrer, entered pleas of guilty, and were thereupon sentenced by the trial judge to imprisonment in the work house of the county for a period of six months, the minimum term of imprisonment prescribed by the statute where imprisonment is a part of the sentence.

In this proceeding in error the indictment is attacked upon several grounds, but mainly that it is fatally defective in not alleging facts constituting an offense against the laws of the state. Some consideration has been given to the question whether the indictment charges numerous offenses in one count and is thereby obnoxious to the charge of duplicity. This matter may perhaps be disposed of by reference to the case of *Jones* v. *State,* 14 C. C., 363, decided by the Circuit Court of Clinton County, Judges Cox, Smith and Swing, in 1897. The fifth paragraph of the syllabus indicates the point applicable to the indictment before us. I read:

"A demurrer to an indictment for blackmail is a waiver of such an objection as that it charged different, distinct and repugnant crimes, and was bad for duplicity. Such irregularity can only be reached by motion to quash."

In *Hughes* v. *State,* 9 C. C.—N. S., 369, decided by this court in Erie county, we had an indictment similar in form, charging an offense as committed upon a certain day and during an entire period to a later day; and in that case we held that the indictment

was not bad for duplicity. There is no particular discussion of that question in the opinion, but as nearly as my memory serves me we arrived at the conclusion that the indictment charged at least one offense, and that really there was no purpose on the part of the grand jury to charge any more than that. The case was treated as charging but one offense by the trial court in that case; and I might say that the accusation in the case at bar has been so treated. There has been, in other words, no assertion of the right under a provision of the Valentine law, to treat every day's violation of the act as an independent offense. The whole of the indictment, so far as it alleged the time of the commission of the offense, beyond the assertion of one particular time, might be treated as surplusage and the indictment in this regard still be deemed sufficient. There is no question under the decisions of this state, however, that different offenses, misdemeanors of the same class or character, may be joined in one indictment. The question is not whether they may or may not be so joined, but whether they may be blended in one count. Without going farther than to recognize the doctrine asserted in *Jones* v. *State, supra,* we are content to rest our decision, so far as the question of duplicity is concerned, upon that case. We believe that the position of the Circuit Court of Clinton County—that duplicity was waived by failure to file a motion to quash—was well taken.

The same thing may be said as to any criticism that the indictment does not definitely apprise the defendant of the offense of which he is accused. This of course does not touch the question whether the indictment is or is not fatally defective in omitting to charge a crime; it relates only to indefiniteness. Not only the statutory law but the Constitution requires that defendants must be charged so definitely as to be apprised of the precise nature of the offense that they are claimed to have committed against the law of the state. The statute provides means by which, if the indictment is not sufficiently precise, the accused may assert their right and obtain the protection of the court; and the same statute provides that failure to file a motion to quash will waive all matters which might be

objected to by such motion. A motion to quash is pecu-
liarly adapted to point out the defects in an indictment,
which make it merely indefinite. That is the object of the mo-
tion, and if a party does not see fit to avail himself of such
procedure, the statute permits the courts to infer that he did not
care to do it—that the indictment had sufficiently apprised him
of the charge which he was to meet.

In *State* v. *Gage*, 72 Ohio State, 210, decided by the Supreme
Court, the indictment alleged the infraction of the law during
a continuous period from one day to another, as in *Hughes* v.
*State, supra,* and the case at bar. No attack was made upon
the indictment by any motion to quash. A demurrer was filed
and overruled. What would have been the effect of a motion
to quash is not indicated.

It is urged upon us that from the language of the indict-
ment it does not definitely appear whether the pleader is at-
tempting to charge an infraction of Section 4427-10 or some
other section of the Valentine law; or, to state the position of
counsel a little more precisely, it is contended, without conceding
that the indictment charges any offense under the law, that
if it does charge such, it charges only an infraction of Section
4427-10, which defines offenses punishable by fine only.

It is also said, in substance, that the indictment ought not to
be so drawn as that the court may, at its option, impose a penalty
under either section of the statute—4427-10 or 4427-4, which
provides a penalty of fine or imprisonment, or both.

These contentions have induced a careful examination of this
indictment, in connection with the statute, that we might arrive
at the real intent of the pleader as to which section should gov-
ern the procedure. Omitting matters not material, the indict-
ment, in substance, charges that Arnsman and numerous other
named defendants, on the 8th day of October, 1906, and con-
tinuously between said date and the day of the finding of the
indictment, at the county of Lucas, were members of, and each
of them was a member of and unlawfully and knowingly acted
with and in pursuance of and aided and assisted in carrying
out the purpose of an unlawful trust and combination of capi-

tal, skill and acts, formed for the purpose of carrying out restraint in trade and commerce in increasing the price of and preventing competition in the sale of lumber, a commodity and article of commerce intended for sale, use and consumption in the state of Ohio of all kinds of timber, sawed or split for use, including beams, joists, planks, boards, shingles, lath and all articles of every kind manufactured from timber and for the purpose of fixing and maintaining uniform and graded figures for the sale of lumber in the city of Toledo in said county, that the prices thereof might be increased, and for the purpose of making, executing and carrying out certain contracts and agreements by which they might keep the price of lumber at fixed and graded figures and establish the same as the prices of lumber in said city, so as to preclude a free and unrestricted competition among the members of said trust and combination in the sale of lumber, and by which they bound themselves not to sell or dispose of any lumber for use in said city below the common standard of figures, and agreed to pool, combine and unite their interests in the sale of lumber in said city that the prices thereof might be increased.

Section 10 of the Valentine act (4427-10) defines specific violations of the statute and imposes a penalty therefor. Let us examine this section for a moment. It is as follows:

"It shall not be lawful for any person, partnership, association or corporation, or any agent thereof, to issue or to own trust certificates, or for any person, partnership, association, or corporation, agent, officer or employe, or the directors or stockholders of any corporation, to enter into any combination, contract or agreement with any person or persons, corporation or corporations, or with any stockholder or director thereof, the purpose and effect of which combination, contract or agreement shall be to place the management or control of such combination or combinations, or the manufactured product thereof, in the hands of any trustee or trustees with the intent to limit or fix the price or lessen the production and sale of any article of commerce, use or consumption, or to prevent, restrict or diminish the manufacture or output of any such article, and any person, partnership, association or corporation that shall enter into any such combination, contract or agreement for the

use aforesaid shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished by a fine of not less than fifty dollars, nor more than one thousand dollars.''

As we construe this section, it prohibits any person, partnership, association or corporation, from issuing or owning trust certificates. That is the first prohibition of this section; and the second is that it shall be unlawful for the directors or stockholders of any corporation to enter into a combination, the purpose of which is to place the management and control of its affairs or manufactured product in the hand of any trustee or trustees, with the intents and purposes subsequently stated in the section.

We do not construe this section as making it unlawful for any person to enter into a combination to prevent, restrain or diminish the manufacture or output of any article. The two things which are prohibited by the section are the acts connected with trust certificates and acts connected with the trustee, and the section does not reach further than that. It does not attempt to prohibit the entering into a combination for the general unlawful purposes which are specified in Section 4427-1, the purposes which are explicitly stated in this indictment as those of the alleged combination or trust, of which it is said these defendants were members. We think, then, that the indictment was not drawn under the tenth section. The question remains whether the indictment is good under Section 4427-4, which provides:

''Any violation of either or all of the provisions of this act shall be and is hereby declared a conspiracy against trade, and any person who may become engaged in any such conspiracy or take part therein, or aid or advise in its commission, or who shall, as principal, manager, director, agent, servant, or employer, or in any other capacity, knowingly carry out any of the stipulations, purposes, prices, rates, or furnish any information to assist in carrying out such purposes, or orders thereunder, or in pursuance thereof, shall be punished by a fine of not less than fifty dollars nor more than five thousand dollars, or be imprisoned not less than six months nor more than one year, or by both such fine and imprisonment. Each day's violation of this provision shall constitute a separate offense.''

And also the following section, 4427-5, which makes the special provision relied upon by the prosecuting attorney in support of his claim of the sufficiency of this indictment. It provides:

"In any indictment for any offense named in this act, it is sufficient to state the purpose or effects of the trust or combination. And that the accused is a member of, acted with or in pursuance of it, or aided or assisted in carrying out its purposes without giving its name or description, or how, when and where it was created."

So many phases of this question have been presented to us, not only in oral argument, but in the voluminous briefs, that it will be impossible for me in the time which I have allotted to myself for the rendering of this opinion, to review all of the contentions of counsel. We have been much impressed with the plausibility of many of the arguments presented, and if this were an entirely original question in this state, we might be largely influenced by some of the decisions from the courts of other states. But we do not deem it an open question in Ohio. We think that *State* v. *Gage, supra,* which determined some other questions in regard to the Valentine law, in effect determined the question of the sufficiency of an indictment so analagous to the one before us as to make it decisive of the case which we are considering. As already stated, *State* v. *Gage, supra,* was submitted to the court upon a demurrer to the indictment, and that demurrer was overruled. The defendant entered a plea of guilty and afterwards moved in arrest of judgment upon the same grounds stated in the demurrer. We are not prepared to say, at least I am not, that any rights were lost to the defendants in the case at bar by failing to demur to this indictment; but we may safely say that defendants can make no larger claims after the non-filing of a demurrer, and after the entry of a plea of guilty, than they could have asserted upon the filing of a demurrer. In other words, they can make no larger claims of right, in the case at bar, than were available on demurrer before the trial court and in the Supreme Court in *State* v. *Gage,* assuming that the indictments were upon the same

footing as to sufficiency.   On page 211 of *State* v. *Gage,* we find a substantial statement of the form of the indictment as follows:

"The indictment charged 'that Perley W. Gage of said county, on the first day of November in the year of Our Lord one thousand nine hundred and two, with force and arms, in said county of Delaware and state of Ohio, and until this sixth day of January in the year of Our Lord one thousand nine hundred and three, said Perley W. Gage, late of the said county of Delaware, was an active member of, acted with and in pursuance of, aided and assisted in carrying out the purposes of the Delaware Coal Exchange.' "

The word "active" as here inserted is a term not used in the section of the statute defining what shall be a sufficient charge, and so far as the sufficiency of this clause is concerned, we do not deem the allegation that the person was "an active member" as being of more weight than that he was "a member," because either allegation is a compliance with the terms of the statute in this regard, and in *State* v. *Gage, supra,* there is no more statement of fact in the indictment as to how he acted than in the case at bar.   The name of the alleged combination is not contained in the present indictment, and it is conceded that no name need be given; the statute so says.   I read further:

" 'The Delaware Coal Exchange, an association of persons organized for the purpose of preventing competition in the sale and to maintain a uniform and graduated figure for the sale of coal, and to directly preclude a free and unrestricted competition among the members of said association, purchasers and consumers in the sale and transportation of coal, contrary to the form of the statute.' "

The indictment in *State* v. *Gage* is much more meager than in the case at bar in some respects.   Still it does include the statement that the membership was in an association "of persons" organized for certain purposes; the language of the indictment before us is that "they were members of and each was a member of and unlawfully and knowingly acted with and in pursuance of an unlawful trust and combination of capital, skill and acts." It does not state that it was an association "of persons"; and

it is true enough, as counsel in substance urge, that there may be a combination of skill and capital or labor and capital, where there are not two or more persons involved.  In other words, an individual may combine his skill and his money, putting them both into some employment, and there is no violation of law, no breach of public policy in that.  The law contemplates a conspiracy, a combination of two or more persons, corporations or partnerships, and it does not contemplate as a criminal act the combination of all the faculties, all the resources, of an individual for the carrying out of any lawful purpose.

But the indictment in the case at bar alleges that this entity—this thing, whatever we call it, of which these defendants were members—was an "unlawful trust and combination" and in this word "trust" we have involved so much, after the definition of a trust in the act itself, as to take away the force of very much of the argument that has been made.  In the original enactment, which is not at this moment before me, the act is entitled, if I remember aright, "An act to define trusts," etc.  In the present compilations of the Revised Statutes the title of the act is omitted; but Section 1 of the act (4427-1) gives the definition "A trust is a combination of capital, skill or acts by two or more persons, firms, partnerships, corporations or associations of persons, or of any two or more of them for either or all of the following purposes."  It can not be a "trust" within the definition of the statute, unless it be a combination of the sort which the statute describes. It can not be a combination of faculties or resources in the mind or hands of one person to accomplish some purpose, confined to his own breast.  It must be a combination of two or more persons, partnerships, corporations or association of persons, and when the pleader here says that these persons were members of "an unlawful trust," he has stated all of those things; he has stated in effect that they were members of a combination of two or more of these several kinds of things mentioned in the statute, persons, firms, corporations or associations; and he has said also that it was a combination of "capital, skill and acts," using the conjunctive conjunction; he says it was formed for all of these purposes mentioned in Section 1 of the act.

Returning to *State* v. *Gage, supra*, we think that the overruling of the demurrer by the court below, and the affirmance of the sentence rendered upon the plea of guilty, because the Supreme Court did affirm the judgment of the court of common pleas, reversing the circuit court, which had set aside the judgment of conviction, is a necessary recognition of the sufficiency of the indictment in that case.   The indictment in *State* v. *Gage* did not go so far as to allege that the Deleware Coal Exchange was an unlawful association or a trust.   It attempted to allege specifically that it was an association of persons formed for what was claimed to be an unlawful purpose under this law.   Here the pleader has adopted the other form, and instead of saying that it was an unlawful association of persons, he says that it was an unlawful trust.   He has averments here from which there is no escape, that there was an association of persons or corporations, it matters not which, unless the indictment for indefiniteness was obnoxious to a motion to quash, had one been filed.

The result of this inquiry under the views entertained by our court, must manifestly be the overruling of the contention of the defendants that the indictment is fatally defective.   There was sufficient here to apprise the defendants that they were accused of a crime, and that crime the violation of the Valentine law.

The contention of the defendants that the court could not lawfully imprison because, if the defendants were guilty of anything under the indictments, it could only be an infraction of Section 10 of the act, we do not sustain; nor, on the other hand, do we sustain a contention made by the prosecuting attorney, if we understand him aright, that the court below, having once concluded that imprisonment must be imposed, there can now be no departure from that kind of penalty upon reversal.   The sentence was imprisonment in the work house instead of in the jail, and it is agreed by counsel that because the sentence to the work house was not authorized, as has been held by the Supreme Court in the ice trust case recently disposed of, this case must go back to the court of common pleas.

The case, as stated, must be remanded.   Following the deci-

sion of the Supreme Court, we hold that the sentence was erroneous in that it prescribed imprisonment in the work house at labor as a part of the sentence. Under the statute, as construed by the Supreme Court, no such an imprisonment can be imposed. The sentence of the court below, then, being erroneous, is to be set aside; and when the case is remanded it goes back to the court for the court to take it up at the point which had been reached when the sentence was imposed.

Another contention which was made on oral argument upon the first hearing before us by one of the counsel for the defendants was that the sentence which had been imposed by the court below was unconstitutional in that it was cruel and unusual. This question is not now before us, in view of the disposition which is made of the case in setting aside the sentence. It is enough for us to say that the court below has the same powers and the same rights as it had upon the first hearing after the plea of guilty and before sentence.

It has full discretion to fine or imprison, or both, under Section 4 of the Valentine act.